UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-cv-434-FL

| PRISCILLA STATEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM &** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| TEKELEC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's Motion to Dismiss [DE-14] the Plaintiff's original Complaint [DE-3] and Defendant's Amended Motion to Dismiss [DE-27] Plaintiff's Amended Complaint [DE-25]. Plaintiff was informed by the Court of her right to respond to the motions [DE-17, 29], and she has not filed any response. The time for Plaintiff to respond has expired, and the motions are now ripe. Discovery has been stayed pending resolution of the Amended Motion to Dismiss. [DE-30.] These pending motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation. For the reasons discussed below, the undersigned recommends **DENYING AS MOOT** Defendant's motion to dismiss the original complaint and **GRANTING IN PART AND DENYING IN PART** Defendant's amended motion to dismiss.

## STATEMENT OF FACTS

Plaintiff, proceeding *pro se*, filed this action against her former employer, Tekelec, in September 2009. Plaintiff, a black female, worked for Tekelec from July 2006 to November 2008. Am. Compl. ¶¶ 10, 16. Tekelec provides services in the telecommunications field. Plaintiff was first hired as a Warranty Specialist I with a salary grade 12. *Id.* ¶ 18. In October

2006, she applied for and obtained a position as a Revenue Analyst with a salary grade 12. *Id.* ¶¶ 19-20. The position had been posted as a salary level 13 position, but Plaintiff alleges she was told that her performance would be evaluated in June 2007 before promoting her to the higher salary grade. *Id.* ¶¶ 19-21. Plaintiff alleges she was given continually more challenging job responsibilities, including responsibilities of a Senior Analyst at a salary grade 15. *Id.* ¶¶ 22, 23. Plaintiff alleges despite being given favorable reviews, she was not promoted to a higher salary grade. *Id.* ¶ 23. In February 2008, Plaintiff applied for a Senior Accountant position with a salary grade 15. *Id.* ¶ 24. Plaintiff alleges she met the minimum qualifications for the position, and her job responsibilities at the time included some of the Senior Accountant responsibilities. *Id.* ¶¶ 25-26. Plaintiff alleges she applied for this position soon enough after the posting to be given "priority consideration" for the position per Tekelec's Internal Job Opportunity Program. *Id.* ¶¶ 27-29. Plaintiff alleges that Defendant hired a white female, who applied externally (not from within Tekelec's workforce), for the Senior Accountant position. *Id.* ¶ 30. Plaintiff claims she inquired with Mandy Schoonmaker (the hiring manager), and she was given no explanation why she did not get the job. *Id.* ¶ 31. Plaintiff further alleges that Tekelec's President and CEO, Frank Plastina, stated at a company meeting that internal applicants who meet the minimum qualifications for a position will be given that job "100% of the time." *Id.* ¶ 32.

Plaintiff alleges that another white female internal applicant was given a job promotion to Senior Revenue Analyst sometime before May 2008, despite not meeting the posted qualifications. *Id.* ¶ 34. Plaintiff alleges that in May 2008 she applied for another, higher paid, position (Revenue Senior Analyst). She alleges she met the minimum requirements, she was performing all of the job responsibilities of that position, she received above average reviews, yet she did not get that position. *Id.* ¶¶ 38-47. In fact, she alleges Tekelec changed the posting to a

Revenue Accounting Manager at an even higher salary grade, but kept the same job description and qualifications. *Id.* ¶ 42. Plaintiff alleges Tekelec hired a "non-black female" who was an external candidate for the job and, on information and belief, less qualified than Plaintiff. *Id.* ¶ 47.

Thereafter, on September 8, 2008, Plaintiff requested an internal investigation regarding her feelings that she was being treated differently than other, non-black employees in her department. *Id.* ¶ 49. The Human Resources Director, Ms. Alvarado, agreed to conduct the investigation, but Plaintiff alleges she was never given the results of any investigation. *Id.* ¶¶ 50-57.

On October 20, 2008, Plaintiff again applied for another position, the Credit and Collections Analyst 3 position. On October 28, 2008, Plaintiff told Ms. Alvarado via electronic mail that she had initiated an investigation with the "Equal Employment [Opportunity] Commission." *Id.* ¶ 54. Plaintiff was out of the office the week of October 29, 2008, due to the death of her grandmother. *See id.* ¶¶ 58-59. When she returned, she was told at a meeting (that she secretly recorded) that her position of Revenue Analyst had been eliminated "because of the budget." *Id.* ¶ 60. As far as she knows, Tekelec did not eliminate any other positions and, in fact, created new positions within her department to promote others. *Id.* ¶¶ 64-65. Plaintiff's termination was effective November 24, 2008, and she signed a severance agreement on December 15, 2008. *Id.* ¶ 78.

At the exit interview, Plaintiff alleges Ms. Alvarado told her she was still eligible for the Credit and Collections Analyst 3 position that she had applied for, but Plaintiff never got the job. *Id.* ¶¶ 66-72. This position remained open and unfilled until February 2, 2009. Plaintiff alleges that the hiring person for that position requested to interview her, but she "was not allowed to

3
Case 5:09-cv-00434-FL   Document 31   Filed 08/10/10   Page 3 of 17

interview." *Id.* ¶¶ 70-73. Plaintiff alleges that the white female who previously held this position told her that although she was not qualified for it, "they gave her a chance because the position was open so long without qualified applicants." *Id.* ¶ 74. Plaintiff claims Tekelec did not hire her or anyone else for the open position for a while because it was seeking a "white applicant more qualified than [her]." *Id.* ¶ 76. Plaintiff filed "a discrimination and retaliation complaint alleging discrimination for the Credit and Collections Analyst 3 position beginning November 25, 2008 through February 03, 2009." *Id.* ¶ 77.[1]

Plaintiff further alleges Tekelec withheld (or delayed) her severance payment by sending her checks via Federal Express, signature required, against her wishes, which resulted in her not receiving her severance check(s) until February 2009. *Id.* ¶¶ 80-83. Plaintiff also alleges that Defendant did not provide her the agreed-to health care benefits and that Defendant "blacklist[ed]" her at other employers at least three times. *Id.* ¶¶ 84-92.

Plaintiff's Amended Complaint[2] asserts four causes of action against Tekelec: (1) intentional racial discrimination in violation of Title VII of the Civil Rights Act; (2) racial discrimination in violation of the Reconstruction Era Statutes, 42 U.S.C. § 1981; (3) retaliation for her engaging in the protected activity of asserting her right to be free from racial discrimination, in violation of Title VII; and (4) employment discrimination for "failure to hire" in violation of the North Carolina Equal Employment Practices Act. Plaintiff seeks lost wages and benefits, front pay and back pay, other compensatory damages, punitive damages, and costs.

## DISCUSSION

---

[1] This appears to reference Plaintiff's EEOC charge of discrimination, which Plaintiff refers to elsewhere as "EEOC Charge No. 433-2009-00755." Am. Compl. ¶ 53.

[2] The undersigned generally refers to Plaintiff's allegation and claims made in her Amended Complaint [DE-25], which Plaintiff filed on December 22, 2009, because it seems to be the most detailed and comprehensive assertion of Plaintiff's claims, and also the latest statement of her claims. Moreover, as Defendant notes, the Amended Complaint is not markedly different from her original Complaint, which consisted of a fill-in-the-blank style complaint ("Form Complaint") along with a longer, typed-out Complaint [DE-1, 3].

## A. Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the facts pleaded in the complaint. It determines whether a claim is stated; it does not resolve issues of disputed facts, the merits of a claim, or the applicability of defenses. *Republican Party v. Martin*, 908 F.2d 943, 952 (4th Cir. 1992). When reviewing a motion to dismiss, the court considers the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). Generally, if a court considers matters outside the complaint in ruling on a motion to dismiss, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); Fed. R. Civ. P. 12(d) ("If, on a [12(b)(6)] motion, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). However, a court may consider "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed," without converting the motion to dismiss into a motion for summary judgment. *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396-97 (4th Cir. 2006).

Before a court may properly convert a motion to dismiss to a motion for summary judgment, however, the court must provide all parties reasonable notice and the opportunity to present any additional material made pertinent by the conversion. Fed. R. Civ. P. 12(d); *see also Gay*, 761 F.2d at 177 (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)) (The term "reasonable opportunity" requires that all parties be given " 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery."). The

necessity of this notice stems from a recognition that, although the two motions are functionally equivalent in their potential result, they are not the same in practice. *Aldahonda-Rivera v. Parke Davis & Co.,* 882 F.2d 590, 591 (1st Cir. 1989). Notably, while Rule 12(b)(6) motions to dismiss are decided solely on the pleadings, motions for summary judgment rely on additional outside evidence. *Id.* Sufficient notice thus ensures that the opposing parties will bring genuine issues of material fact to the trial court's attention by affording the nonmoving party an opportunity to "marshal its resources" and rebut the motion for summary judgment with every factual and legal argument available. *Denis v. Liberty Mut. Ins. Co.,* 791 F.2d 846, 850 (11th Cir. 1986).

Where one of the litigants proceeds *pro se*, a number of courts have found that more explicit notice is required before a motion to dismiss can be converted into a motion for summary judgment. *See e.g., Davis v. Zahradnick,* 600 F.2d 458, 460 (4th Cir. 1979) (error where district court failed to explain to *pro se* plaintiff that the conversion of a motion to dismiss into a motion for summary judgment entitled plaintiff to file counter affidavits or other responsive material). This is particularly important where a *pro se* litigant's failure to file counter-affidavits or other responsive documents might result in the court's entry of summary judgment against him. *Id.; see also Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir. 1975) (notice must be sufficiently clear to be understood by a *pro se* litigant and calculated to apprise him of what is required under Rule 56).

In support of Defendant's motion to dismiss, it offered for the Court's consideration: (1) A severance agreement between Plaintiff and Defendant that contains a broadly-worded release of employment-related claims in exchange for severance benefits; (2) Plaintiff's EEOC charge of discrimination filed on February 6, 2009; and (3) An affidavit from Kent Pritchett, Defendant's

6

Case 5:09-cv-00434-FL   Document 31   Filed 08/10/10   Page 6 of 17

head of human resources ("HR"), explaining how Plaintiff's severance benefits were handled. Plaintiff did not attach the severance agreement to any of her complaints, although she did attach her notice of right to sue statement from the EEOC. However, Plaintiff refers to both her severance agreement and EEOC charge in her Amended Complaint, and there is no question of the authenticity of these documents. Because plaintiffs generally must have exhausted their EEOC remedies before pursuing Title VII employment discrimination claims in federal courts, it would be appropriate for the Court to consider Plaintiff's EEOC charge, despite her failure to attach it to her present action, without converting the instant motion into one for summary judgment. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting courts have a duty to "interpret charitably" pleadings filed by *pro se* litigants); *see Spain v. Va. Commonwealth Univ.*, No. 3:09-cv-266, 2009 WL 2461662, at *3 (E.D. Va. Aug. 11, 2008) (concluding that a motion to dismiss should not be converted into a motion for summary judgment when a plaintiff explicitly referenced the filing of EEOC charges in her amended complaint). Additionally, the severance agreement is central to Plaintiff's claims that the Defendant improperly withheld severance benefits because it is the contract setting forth those benefits. Thus, two of these documents seem to fit squarely within the exception for considering matters outside the pleadings on a motion to dismiss. The Pritchett affidavit, however, does not fit within a recognized exception and may not be considered without converting the motion to one for summary judgment.

Plaintiff was only given *Roseboro* notice of a motion to dismiss being filed against her and was not given notice that the Court might convert the motion to one for summary judgment. *See* Rule 12 Letters [DE-17, 29]. It was not apparent from the title of Defendant's motion that it was seeking, in the alternative, summary judgment. Defendant asks, in footnote 5 of its memorandum in support of the amended motion to dismiss, that the Court consider the Pritchett

7

affidavit and, if necessary, treat Tekelec's motion as to Plaintiff's benefits related claim as one for summary judgment. Thus, even if the Court found it appropriate to convert the motion to dismiss to a motion for summary judgment, it could not do so at this time as Plaintiff has not received the appropriate *Roseboro* notice. Therefore, the Court will not consider the Pritchett affidavit and will only consider Plaintiff's claims in the context of a motion to dismiss, testing the sufficiency of facts pleaded and not the merits of her claims or adequacy of defenses.

### B. Defense of Release as Bar to Plaintiff's Claims Not Properly Considered on a Motion to Dismiss

Defendant contends that Plaintiff's claims for discrimination and retaliation based on acts occurring prior to her execution of the agreement are barred by the release. Def.'s Memo. at 5, 10. While the Court may procedurally consider the release without converting the Defendant's motion to one for summary judgment, it still constrained by the proper standard of review and may only consider the release as it relates to the sufficiency of facts pleaded. Defendant asks the Court to consider the release as a defense to Plaintiff's claims. This is more than the Court can do in the context of a motion to dismiss and is proper only on a motion for summary judgment. The Court notes that the cases cited by Defendant in support of its contention that the release bars Plaintiff's claims were all decided on summary judgment. *E.g., O'shea v. Commercial Credit Corp.,* 930 F.2d 358, 359 (4th Cir. 1991) (review of district court's grant of summary judgment based on execution of release); *Alphonse v. N. Telecom, Inc.,* 776 F. Supp. 1075, 1077 (E.D.N.C. 1991) (defendant filed motion for summary judgment based in part on release of claims); *Lewis v. Extended Stay Am., Inc.,* 454 F. Supp. 2d 453, 454 (M.D.N.C. 2006) (employer moved for summary judgment on all claims); *Horton v. Norfolk S. Corp.,* 102 F. Supp. 2d 330, 332 (M.D.N.C. 1999) (defendant filed motion for summary judgment); *see also Williams v.*

*Aluminum Co. of Am.*, No. 1:00CV379, 2000 WL 1229754 (M.D.N.C. Aug. 10, 2000) (declining to determine on 12(b)(6) motion to dismiss whether release barred discrimination claims).

Furthermore, as explained above, due to Plaintiff's lack of notice that the Court might consider Defendant's motion as one for summary judgment, it would be inappropriate to do so at this time. Accordingly, the Court will not recommend dismissal of Plaintiff's claims based on her execution of the release.

### C. Title VII Claims for Discrimination and Retaliation Not Raised in EEOC Charge are Barred for Failure to Exhaust Administrative Remedies

Before bringing a discrimination claim under Title VII, a plaintiff must first file a discrimination charge with the EEOC. The EEOC claim determines the scope of the plaintiff's right to bring the subsequent Title VII action. *E.g., Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *Webb v. N.C. Dep't of Crime Control and Public Safety, Alcohol Law Enforcement Div.*, No. 7:08-CV-90-D, 2009 WL 3150266, at *5 (E.D.N.C. Sept. 11, 2009). More specifically, "only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). The rationale for the exhaustion requirement in this context is that it provides notice to employers of alleged discrimination and helps encourage agency-monitored settlement. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Failure to exhaust administrative remedies in an EEOC action deprives a court of subject matter jurisdiction over the claim. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). The Fourth Circuit takes a narrow approach to determining when claims are "reasonably related" to or "developed by reasonable investigation of the original complaint." *Evans*, 80 F.3d at 963. For example, the Fourth Circuit recently made clear that if

the EEOC charge alleges discrimination on one basis and the federal action alleges discrimination on a separate basis, that separate federal claim will generally be barred. *Jones*, 551 F.3d at 300. The Fourth Circuit is equally reluctant to allow plaintiffs to expand the alleged adverse employment actions beyond the allegations stated in the original EEOC complaint. *Chacko*, 429 F.3d at 509; *see also Collins v. TIAA-CREF*, No. 3:06-CV-304-RJC, 2009 WL 3077555, at *4 (W.D.N.C. Sept. 23, 2009) (dismissing the Title VII discrimination claims not referenced in the plaintiff's EEOC complaint as the plaintiff failed to exhaust administrative remedies with respect to them). Consequently, the Fourth Circuit has "held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." *Chacko*, 429 F.3d at 509.

Here, Plaintiff filed one EEOC charge of discrimination against Tekelec on February 6, 2009. EEOC Charge [DE-28, Attachment #2]. She makes the following allegations in her EEOC charge:

> I. On October 20, 2008, I applied for the position of Credit and Collections Analyst 3. Tekelec employs more than (15) persons.
>
> II. Tekelec did not give me a reason for not hiring me. I received notice from Career Advance on October 28, 2008 that my application was approved and would be forwarded to the hiring manager. On February 2, 2009, Tekelec advertised the position of Credit and Collections analyst 3.
>
> III. I believe I have been discriminated against because of my race, Black and retaliated against for complaining to report to EEOC of being discriminated against in violation of Title VII of the Civil Rights Act of 1964.

*Id.* (errors in the original). Thus, Plaintiff's EEOC charge only claimed discrimination and retaliation relating to failure to be hired for the CCA position. Plaintiff's present action asserts discrimination and retaliation for a significantly broader pattern of misconduct, including failure to increase Plaintiff's salary grade, Am. Compl. ¶¶ 19-23, failure to award Plaintiff the Senior

10

Case 5:09-cv-00434-FL Document 31 Filed 08/10/10 Page 10 of 17

Accountant position, *id.* ¶¶ 24-32, failure to award Plaintiff the Senior Revenue Analyst Position, *id.* ¶¶ 36-48, and terminating Plaintiff in November 2008, *id.* ¶ 60.

The Court concluded that Plaintiff failed to exhaust her administrative remedies with respect to the broader conduct not included in her EEOC Charge and that the court lacks subject matter jurisdiction over these claims. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Title VII discrimination and retaliation claims based on allegations other than the failure to hire her for the CCA position be **DISMISSED**.

### D. Title VII Race Discrimination and Retaliation Claims Based on Failure to Hire Plaintiff for CCA position

Defendant does not discuss whether Plaintiff's factual allegations are sufficient to state claims for race discrimination or retaliation based on the failure to hire Plaintiff for the CCA position. Defendant relies solely on its argument that the release bars these claims. Nevertheless, the Court will consider whether Plaintiff has sufficiently stated a claim for failure to hire or retaliation related to the CCA position.

In support of her claims related to the CCA position, Plaintiff alleges the following relevant facts: (1) On October 20, 2008, Plaintiff applied for the CCA position; (2) On October 28, 2008, Plaintiff informed Defendant's Human Resource Director that she had spoken to someone at the "Equal Employment [Opportunity] Commission" who agreed to conduct an investigation; (3) Defendant's Human Resource Director told Plaintiff during her November 10, 2008 exit interview that she was eligible to interview for the CCA position; (4) Plaintiff met the qualifications for the CCA position as posted; (5) Some of the job responsibilities of Plaintiff's previous position and the CCA position overlapped; (6) Plaintiff was not hired for the CCA position; (7) Despite Plaintiff's qualification for the CCA position, it remained open until February 2, 2009; (8) The hiring manager for the CCA position requested to interview Plaintiff,

but Plaintiff was not extended an interview; (9) Prior to the posting of the CCA position, it was held by a white female who was promoted to another position; (10) The white female who previously held the CCA position told Plaintiff that "she didn't feel she was qualified for the position when she started working" and that "she felt they gave her a chance because the position was open so long without qualified candidates[;]" (11) Defendant's Human Resources Director confirmed by email that the positions posted on Defendant's website were open; (12) Defendant did not fill the open CCA position because there were no white applicants more qualified than Plaintiff; and (13) On February 6, 2009, Plaintiff filed a discrimination and retaliation complaint alleging failure to hire based on discrimination and retaliation from November 25, 2008 through February 3, 2009. Am. Compl. ¶¶ 53, 54, 66-77.

### a. Claim for Race Discrimination

To state a claim under Title VII for race discrimination based on a failure to hire for the CCA position, Plaintiff must allege the following: (1) She belongs to a protected class; (2) She applied and was qualified for a job for which the employer was seeking applicants; (3) Despite her qualifications, she was rejected; and (4) After her rejection, the position remained open and the employer continued to seek applicants from persons of her qualifications. *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 851 (4th Cir. 2001). There is no question that Plaintiff alleges sufficient facts to satisfy the first three elements by alleging that (1) She is black; (2) She applied for the CCA position, a job for which she was qualified, and Defendant confirmed the position was "open;" and (3) She was not interviewed or offered the CCA position despite her qualifications. *See* Am. Compl. ¶¶ 10, 53, 67, 69, 70, 72 & 75. It is a closer call as to whether Plaintiff alleged sufficient facts to show that after her rejection, the position remained open and the employer continued to seek applicants *from persons of her qualifications.* Plaintiff does

12

Case 5:09-cv-00434-FL   Document 31   Filed 08/10/10   Page 12 of 17

allege that the position remained open because Defendant could not find a white applicant *more qualified* than Plaintiff. *Id.* ¶ 76. Based in part on the Court's obligation to liberally construe the pleadings of a *pro se* plaintiff, the Court finds that this allegation sufficiently satisfies the fourth element. The Court concludes that Plaintiff has sufficiently stated a race discrimination claim for failure to hire her for the CCA position and will not recommend dismissal of that claim at this time.

### b. Claim for Retaliation

To state a claim under Title VII for retaliation, Plaintiff must allege the following: (1) She engaged in protected activity; (2) Defendant acted adversely against her; and (3) The protected activity was causally connected to the adverse action. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). "As for showing a causal link between the protected activity and the alleged retaliation, a plaintiff may establish that 'the employer had knowledge of the employee's protected activity, and that the adverse . . . action took place shortly after that activity.'" *Caldwell v. Jackson*, No. 1:03cv707, 2009 WL 2487850, *4 (M.D.N.C. Aug. 11, 2009). Plaintiff's relevant allegations are that (1) After she applied for the CCA position, she informed Defendant that she had contacted the EEOC and it had agreed to conduct an investigation; (2) Defendant did not hire her for the CCA position; and (3) She was not hired because she is black and she complained to the EEOC. Am. Compl. ¶¶ 53, 54; EEOC Charge [DE-28, Attachment #2]. Plaintiff's initial contact, even before the filing of her EEOC charge, is protected activity. *See Caldwell*, 2009 WL 2487850, *5 (finding initiation of EEO contact was protected activity). Defendant's failure to hire Plaintiff for the CCA position is an adverse action against her. Although Plaintiff filed her complaint with the EEOC after she perceived she had been rejected by Defendant, Plaintiff initiated contact with the EEOC regarding the alleged

discrimination by Defendant prior to filing her complaint, and so informed Defendant only one week after she applied for the CCA position. The Court concludes that Plaintiff has sufficiently stated a retaliation claim for failure to hire her for the CCA position, and the Court will not recommend dismissal of that claim at this time.

### E. Claims Related to Post-Termination Benefits

Defendant asserts that Plaintiff's claims based on Defendant's alleged failure to provide benefits under the severance agreement should be dismissed because Plaintiff received all benefits due. In her statement of facts, Plaintiff alleges that Defendant (1) violated the state "Wage and Hour Act" by withholding her severance payment until the time she would have been paid it were she still employed, Am. Compl. ¶ 80; and (2) violated the severance agreement by cancelling medical coverage until she paid the COBRA premium, *id.* ¶¶ 84-88.

After careful review of Plaintiff's Amended Complaint, the Court concludes that Plaintiff alleged these facts in support of her retaliation claim and not as independent claims for violation of state wage and hour laws or for breach of contract. As the Court has previously discussed, *see supra* sections C. & D., Plaintiff only raised failure to hire her for the CCA position in her EEOC charge; she did not bring any EEOC charge based on her post-termination benefits. The allegations show that Plaintiff was aware of any alleged delay or impropriety with her severance payment and health benefits at the time she filed her EEOC complaint. *See* Am. Compl. ¶¶ 83, 86 (Plaintiff "did not receive severance check until February 2009" and she was notified of COBRA termination on January 9, 2009). Accordingly, the Court **RECOMMENDS** that Plaintiff's Title VII claim for discrimination or retaliation based on post-termination benefits be **DISMISSED**.

Moreover, the Court concludes that, to the extent Plaintiff's Amended Complaint may be construed as attempting to assert claims for violation of state wage and hour laws or for breach of the severance agreement, she has failed to sufficiently state such claims. Plaintiff clearly pleads four claims for relief in her Amended Complaint, none of which is for violation of the North Carolina wage and hour laws or breach of contract. *See* Am. Compl. at 8-10. Further, Plaintiff does not request relief for violation of wage and hour laws or breach of contract in her prayer for relief, *id.* at 10-11, and Plaintiff does not cite any specific provision of North Carolina law related to the wage and hour allegations. While the Court has construed the *pro se* Plaintiff's complaint liberally, it is not obligated to act as her lawyer and search the wage and hour statutes for a potential claim based on these alleged facts. Thus, to the extent Plaintiff is attempting to assert state law claims in relation to her severance benefits, the undersigned **RECOMMENDS** that any claims for state wage and hour law violations or breach of contract be **DISMISSED**.

F.  **North Carolina Equal Employment Practices Act**

Defendant contends that Plaintiff's claim for failure to hire under the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.1 *et seq.,* should be dismissed for several reasons, including that the NCEEPA provides no private right of action. Defendants are correct that North Carolina courts have not recognized a private right of action under the NCEEPA. *Roberts v. Wal-Mart Stores, Inc.*, 503 F. Supp. 2d 787, 788-89 (E.D.N.C. 2007) (granting motion to dismiss claim for relief under N.C. Gen. Stat. § 143-422.1); *see also McLean v. Patten Cmties., Inc.*, 332 F. 3d 714, 719 (4th Cir. 2003) (noting that "absent a clear indication from the North Carolina courts or legislature 'it would be inappropriate for a federal court to create a private right of action under [§ 143-422.2]'") (citing *Smith v. First Union Nat'l*
15
Case 5:09-cv-00434-FL   Document 31   Filed 08/10/10   Page 15 of 17

*Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). Therefore, the undersigned **RECOMMENDS** this claim be **DISMISSED**.

### G. Claims of Race Discrimination and Retaliation under 42 U.S.C. § 1981

Defendant contends Plaintiff's § 1981 claims are barred by the release. The Court has declined to evaluate at this stage of the litigation the release defense as to the Title VII claims, *see supra* Section C, and likewise will not recommend dismissal at this time of the § 1981 claims on the basis of the release.

The essential elements of a discrimination or retaliation claim under Title VII and § 1981 are identical. *Parish v. Siemens Medical Solutions USA, Inc.*, No. 5:08-cv-622-BR, 2010 WL 2553480, *3 n.6 (E.D.N.C. June 18, 2010). However, there is no exhaustion of remedies requirement for § 1981 claims as there is for Title VII claims. *Id.* at *5 n.7 (quoting *Johnson v. Portfolio Recovery Assoc.*, 682 F. Supp. 2d 560, 577 (E.D. Va. 2009)). Accordingly, the Court finds no basis to recommend dismissal of Plaintiff's claims of race discrimination or retaliation under 42 U.S.C. § 1981 at this time.

## CONCLUSION

The Court **RECOMMENDS** as follows:

(1) Defendant's Motion to Dismiss [DE-14] be **DENIED AS MOOT**.

(2) Defendant's Amended Motion to Dismiss [DE-27] be **GRANTED IN PART**, and

   a. Plaintiff's Title VII discrimination and retaliation claims based on allegations other than the failure to hire her for the CCA position be **DISMISSED**;

   b. Plaintiff's state law wage and hour claims and breach of contract claims, to the extent she attempts to plead these claims, be **DISMISSED**; and

   c. Plaintiff's NCEEPA claim be **DISMISSED**.

(3) Defendant's Amended Motion to Dismiss [DE-27] be **DENIED IN PART** with respect to these remaining claims:

   a. Plaintiff's Title VII discrimination and retaliation claims based on the failure to hire her for the CCA position; and

   b. Plaintiff's 42 U.S.C. § 1981 discrimination and retaliation claims.

The Clerk shall send copies of this Memorandum and Recommendation to the parties, who have fourteen (14) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a *de novo* review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

This 9th day of August, 2010.

_____
DAVID W. DANIEL
United States Magistrate Judge